# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ENERGIUM HEALTH | § | |
| | § | |
| v. | § | |
| | § | |
| ALI M. GABALI, SHAFIQUL ALAM, | § | |
| DIAGNOSTIC HEMATOLOGY, | § | |
| DIAGNOSTIC HEMATOLOGY- | § | |
| ONCOLOGLY, DIAGNOSTIC | § | |
| HEMATOLOGY, P.C., DIAGNOSTIC | § | |
| HEMATOLOGY – P.L.L.C., ENCORE | § | |
| DIAGNOSTIC LABORATORY, GREAT | § | |
| LAKES EQUIPMENT, L.L.C., S ALAM | § | CIVIL ACTION NO. 3:21-CV-2951-S |
| LAB SERVICE, HEMATOLOGY | § | |
| ONCOLOGY GLOBAL SERVICES, | § | |
| J&K SUPPLIES AND MANAGEMENT, | § | |
| MYHEALTH URGENT CARE, PC, | § | |
| AHSHAN KABIR LATIF, MYHEALTH | § | |
| UC MANAGEMENT PLC, ASCENSION | § | |
| MYHEALTH URGENT CARE, | § | |
| MYHEALTH MANAGEMENT, LLC, | § | |
| KHAIRYA FAREA, MICHEL | § | |
| ALKHALIL, CONSORTIUM | § | |
| LABORATORY SERVICES, LLC, and | § | |
| FADI DEMASHKIEH | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Ahshan Kabir Latif's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") [ECF No. 47] pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court has reviewed the Motion, Plaintiff's Amended/Corrected Response to Defendant Latif's Motion to Dismiss ("Response") [ECF No. 55], and Defendant Ahshan Kabir Latif's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Reply") [ECF No. 62]. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

This case centers around the alleged abuse of a "business relationship" that grew between Plaintiff and Defendants for over a year. Second Am. Compl. [ECF No. 37] ¶ 100. Plaintiff brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, theft, and civil conspiracy, alleging that Defendants fraudulently induced Plaintiff to invest in a joint business venture called Consortium Laboratory, then stole and concealed Plaintiff's investment by transferring it to "a wide network of shell companies with interlocking relationships with various business entities." *Id.* ¶¶ 149-79, 35, 91. At the heart of this business relationship rested two contracts: the Commission Agreement and the Billing Contract (collectively, "Agreements"). Resp. 5 (citing Appendix to Plaintiff's Response to Defendants' Motion to Dismiss [ECF No. 28-1] 1-8). The Commission Agreement was a form of supply contract wherein Plaintiff agreed to supply an entity owned and operated by Defendant Ali M. Gabali with COVID-19 testing supplies. *Id.* at 2. The Billing Contract granted authority to a third-party attorney to accept and disburse payments from Gabali to Plaintiff. *Id.* at 5-8.

Both of the Agreements contain forum selection clauses. The relevant provision in the Commission Agreement reads:

> 8. Governing Law. This Agreement was created and shall be interpreted based on the laws of the State of Texas. Any claims or disputes brought hereunder shall be subject to the jurisdiction of Dallas County, Texas.

*Id.* at 3.

The clause at issue in the Billing Contract reads:

> 1. Choice of Law. The parties agree that this contract was drafted using Texas law and any dispute arising under this Agreement shall be settled with the application of Texas law and the venue for any disputes shall be in Texas.

*Id.* at 7.

Plaintiff filed its lawsuit in this Court on November 24, 2021, naming Gabali, Alam, and various business entities as defendants. Latif, the Defendant who filed the present Motion, was not added to this lawsuit until Plaintiff filed its Second Amended Complaint on November 9, 2022. Plaintiff's main allegation against Latif is that he either currently controls Consortium Laboratory or dissolved it "both to further the 'bust-out' scheme and to attempt to disassociate Dr. Gabali and Dr. Alam from entities they used to carry out the scheme." Second Am. Compl. ¶¶ 9, 27, 156 (emphasis omitted). According to Plaintiff, Gabali's wife, Defendant Khairya Farea, illegally changed the authorized agent for Consortium Laboratory from herself to Latif after Plaintiff filed its RICO claims on January 12, 2022. *Id.* ¶¶ 10, 156, 124. However, Plaintiff also alleges that Farea, not Latif, "filed a certificate of dissolution of Consortium Laboratory Services, LLC as the authorized agent" on January 17, 2022. *Id.* ¶ 123. According to Latif, he has "never had a relationship with or knowledge of Consortium [Laboratory]" and the entity he is associated with, Consortiums Laboratory Services, LLC ("Consortiums"), is a "separate, distinct, and unrelated entit[y]." Second Affidavit of Ahshan Kabir Latif ("Latif Affidavit") [ECF No. 62-1] 2.

Plaintiff further alleges that the "enterprise network" led by Gabali and others involved Latif "to carry out their scheme." *Id.* ¶ 29. Specific to Latif, the Second Amended Complaint alleges that he is an "associate of the network," he does not "appear to have any relation to the medical industry," and he "appears in several filings / listings as a member, resident agent, director, manager, shareholder, secretary, treasurer, or president" according to the Florida Department of Motor Vehicles. *Id.* ¶¶ 122, 9.

Plaintiff also alleges that Latif, along with Defendants Demashkieh, Akhalil, Alam, Gabali, and Farea, "transferred monies from the labs / projects to various other entities' financial accounts for their personal use and gain, with the intent to deprive EH of the ownership and use of these

3

monies," "made or caused to be made fraudulent representations and activities to achieve the scheme of the racketeering enterprise," and "committed the predicate acts of wire fraud, mail fraud, money laundering, and other criminal activities." *Id.* ¶¶ 162-63, 169.

Latif is not a signatory to either of the Agreements and avers that he was not even introduced to Gabali until after they were signed. Rep. ¶¶ 9, 7. Latif contends his only interaction with Gabali occurred when he "utilized Gabali as a consultant and then supplier for a time" in the course of his own business beginning in December 2021, months after the Agreements were signed. *Id.* ¶ 8. According to Latif, his "sole interaction with Consortium [Laboratory] is that an entity he is involved with, Consortiums Laboratory Services, LLC, purchased assets from Consortium [Laboratory]." *Id.* Latif even denies knowing "what Gabali's exact relationship, if any, was/is with Consortium Laboratory" because the transaction between Consortium Laboratory and Consortiums was handled, and the associated contracts were signed, by Consortium Laboratory's president, Eman Abu-Baker, not Gabali. *Id.* at 5 n.15. He maintains that he had "nothing to do" with Consortium Laboratory's alleged change of registration from Farea to Latif or "the acts about which Plaintiff complains." *Id.* ¶¶ 3, 7.

Latif further denies any connection to Texas related to Plaintiff's claims. Mot. ¶ 3. Latif points out that he is a Florida resident and the only entities Plaintiff alleges that Latif is affiliated with are located in Florida as well. *Id.* According to Latif, he owns no property in Texas, has never "individually" conducted business in Texas, and "had no dealings with Plaintiff in Texas." *Id.* Rather, his contact with Texas has been limited to travel for "personal matters unrelated to Plaintiff's claims." *Id.*

4

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows defendants to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(2), the Court must accept Plaintiff's "uncontroverted allegations[] and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

Because Texas's long-arm statute extends to the limits of federal due process, the Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Personal jurisdiction can be general or specific. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Plaintiff does not contend that Latif is subject to general jurisdiction in this Court, so this opinion will address only specific jurisdiction.

## III. ANALYSIS

Latif argues that he lacks the requisite minimum contacts with Texas to establish personal jurisdiction over him for Plaintiff's claims. Mot. 2. Plaintiff responds that the forum selection clauses in the Agreements, RICO's nationwide service of process mechanism, and Latif's alleged purposeful contacts with Texas each provide an independent basis for the Court to exercise personal jurisdiction over him. Resp. 12.

### *A. Forum Selection Clauses*

Parties may consent to personal jurisdiction through a forum selection agreement. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). Federal law governs

the enforceability of forum selection and choice-of-law clauses "whether jurisdiction be based on diversity, a federal question, or some combination of the two." *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin*, 46 F.3d at 15 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Where "the language of the provision unambiguously states an effective designation of an exclusive forum[,]" all signatories waive "any objection to venue and personal jurisdiction," absent proof of "fraud or overreaching." *Id.*

Plaintiff argues that Latif is bound by the forum selection clauses because he is "closely related to the defendants, especially Defendant Gabali." Resp. 21 (emphasis omitted). The Fifth Circuit's recent decision in *Franlink Inc. v. BACE Services, Inc.* controls. 50 F.4th 432 (5th Cir. 2022). "To bind a non-signatory to a forum selection clause . . . 'the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound.'" *Id.* at 441 (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). In determining whether the non-signatory is closely related, the Court considers four factors: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." *Franlink Inc.*, 50 F.4th at 442 (citing, among other sources, *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439-42 (7th Cir. 2012)).

Neither of the Agreements binds Latif. Plaintiff alleges that Gabali, a signatory to both Agreements, used Plaintiff's investment to organize and operate Consortium Laboratory. Second Am. Compl. ¶ 35. Then, according to Plaintiff, Gabali's wife Farea amended Consortium Laboratory's corporate filings to change the registered agent from herself to Latif. *Id.* ¶ 121. Even

6

if these allegations amounted to "common ownership" for purposes of *Franlink*'s "closely related" analysis, none of the other factors weigh in favor of binding Latif. Plaintiff fails to allege[1] any direct connection between Latif and the Agreements, much less direct benefits obtained from them. Furthermore, Plaintiff offers no basis for the Court to conclude that Latif knew of either of the Agreements or their respective forum selection clauses. Accordingly, the Agreements do not confer personal jurisdiction over Latif.

### *B. RICO*

"A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). "In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause." *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627 (4th Cir. 1997).

RICO, 18 U.S.C. § 1965, "separately provides for service of process and personal jurisdiction." *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 299 n.6 (5th Cir. 2011) (citation omitted). A circuit split persists on the issue of which subsection of Section 1965 confers nationwide service of process. *See generally Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (describing nature of circuit split). While the Fourth and Eleventh Circuits have held that Section 1965(d) authorizes nationwide service of process, the majority of circuits considering the question have concluded that Section 1965(b) grants nationwide service

---

[1] Although Plaintiff argues in conclusory fashion that Latif "received the benefit of the Defendants / Latif's attempts to use an additional name to operate and receive / transfer monies, while attempting to hide the fact that business and monies went to the newly named entity," the Second Amended Complaint fails to mention the Agreements or how they relate to any benefits Latif might have gained from the relationship between Plaintiff and the signatory defendants. Resp. 21 (emphasis omitted).

7

of process. *Id.* This distinction is relevant because the courts that have found Section 1965(b) grants nationwide service of process read the statute to permit service on other defendants only after the plaintiff can establish personal jurisdiction over at least one defendant under Section 1965(a). *Id.* at 779-80.

As explained in the Court's prior order, this Court finds with the majority of circuits and the *Rolls-Royce* court's interpretation of *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916 (5th Cir. 1987), that Section 1965(b) requires plaintiffs to establish personal jurisdiction over at least one defendant under Section 1965(a) before the other RICO defendants can be subject to nationwide service of process under Section 1965(b). Mem. Op. & Ord. [ECF No. 35] 17; *Rolls-Royce*, 576 F. Supp. 2d at 780.

*i. Section 1965(a)*

Section 1965(a) provides that RICO claims may be brought in any federal district "in which [the defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In *Caldwell*, the Fifth Circuit recognized that "[a] number of district courts have held that this language requires that a defendant be conducting business in the forum." 811 F.2d at 918 (holding that a single letter mailed from South Carolina defendants to Texas plaintiffs was insufficient to show that defendants "conduct[ed] business in Texas," especially where plaintiffs initially solicited the transactions underlying their RICO claims). From a practical standpoint, many district courts have "construed § 1965(a)'s 'transacts his affairs' language to require traditional minimum contacts analysis under the state's long arm statute." *Harvest Nat. Res., Inc. v. Ramirez Carreno*, No. CV H-18-483, 2020 WL 3063940, at *6 (S.D. Tex. June 9, 2020) (quoting *Rolls-Royce*, 576 F. Supp. 2d at 780); *see also ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 691 (E.D. Tex. 2020) (exercising personal jurisdiction over RICO defendants where one defendant allegedly

8

committed mail and wire fraud through misrepresentations made via phone to the plaintiff "whom he knew to be in Texas").

Here, Plaintiff has shown that at least one defendant has "conduct[ed] business" in Texas.[2] *Caldwell*, 811 F.2d at 918. Plaintiff alleges that Gabali committed mail fraud, wire fraud, bank fraud, and money laundering in furtherance of the alleged scheme to defraud Plaintiff by, for example, inducing Plaintiff to invest in Consortium Laboratory through misrepresentations, contracting with Plaintiff, demanding that Plaintiff supply equipment and capital in order to operate the laboratory, and creating and sending to Plaintiff fraudulent invoices to avoid honoring Plaintiff's investment. Second Am. Compl. ¶¶ 48, 92, 49, 40. According to Plaintiff, Gabali directed these intentional acts at Plaintiff, "whom he knew to be in Texas[.]" *ESPOT*, 492 F. Supp. 3d at 691. Therefore, Plaintiff has alleged sufficient contacts between Gabali and Texas to make a prima facie showing that he is subject to personal jurisdiction in this Court for Plaintiff's RICO claim. Thus, at least one Defendant is subject to personal jurisdiction in this Court under § 1965(a).

*ii. Section 1965(b)*

Once the Section 1965(a) threshold is met, Section 1965(b) then "allow[s] for nationwide service of process and personal jurisdiction over any other party," as long as the "ends of justice" so require. *Id.* at 685 (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)). "In a RICO action, the 'ends of justice' require nationwide service of process to further the Congressional intent of allowing 'plaintiffs to bring all members of a nationwide [] conspiracy before a court in a single trial.'" *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M, 2009 WL

---

[2] In a prior order, this Court found that Plaintiff alleged sufficient contacts between Gabali and Texas to make a prima facie showing that he is subject to personal jurisdiction in this Court for Plaintiff's RICO claim. Mem. Op. & Ord. 17-19, 33-35. However, that finding was made with respect to the allegations in Plaintiff's First Amended Complaint. *See* ECF No. 9. Because the Second Amended Complaint materially alters and omits allegations from the First Amended Complaint, the Court reanalyzes Plaintiff's allegations against Gabali under 18 U.S.C. § 1965(a).

9

347423, at *3 (N.D. Tex. Feb. 11, 2009) (alteration in original) (quoting *Butcher's Union*, 788 F.2d at 539).

The precise meaning of "ends of justice" is "unresolved in the Fifth Circuit." *ESPOT*, 492 F. Supp. 3d at 686. Some courts hold that plaintiffs must "show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539. Others interpret the phrase broadly "in light of the congressional directive to 'liberally construe[] [RICO] to effectuate its remedial purposes.'" *ESPOT*, 492 F. Supp. 3d at 686 (alterations in original) (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231-32 (10th Cir. 2006)); *see also Rolls-Royce*, 576 F. Supp. 2d at 782 (adopting the reasoning of the *Cory* court and holding ends of justice required exercise of personal jurisdiction over all RICO defendants). The Court need not decide which interpretation applies because Plaintiff's allegations fail to satisfy either.

Plaintiff has not met its burden to show that the "ends of justice" would require this Court's exercise of personal jurisdiction over Latif. In its Response, Plaintiff presents only one argument supporting its contention that the ends of justice require haling Latif into this Court – that Plaintiff's claims "are based in large part on underlying contracts" with Texas forum selection and choice-of-law clauses. Resp. 22. As discussed *supra*, Plaintiff has failed to plead facts showing that the Agreements at issue involve, much less bind, Latif. Even under the more flexible interpretation of the "ends of justice" standard, "such general assertions fall short." *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015); *see also Butcher's Union*, 788 F.2d at 539 (holding ends of justice did not require exercise of personal jurisdiction over two non-resident RICO defendants where complaint made no reference to their contacts with the forum state other than one general assertion).

### *iii. Pendent Personal Jurisdiction*

"When a court has personal jurisdiction over the defendant on one claim, the court can exercise pendent personal jurisdiction over the same defendant on all other claims arising out of the same nucleus of operative fact." *ESPOT*, 492 F. Supp. 3d at 700 (citing *Rolls-Royce*, 576 F. Supp. 2d at 783). Because RICO does not confer personal jurisdiction over Latif, the Court cannot exercise pendent personal jurisdiction over Latif on any of Plaintiff's other claims.

### *C. Minimum Contacts*

Finally, Plaintiff has also failed to plead the requisite minimum contacts between Latif, the dispute, and Texas to render him subject to personal jurisdiction in this Court on Plaintiff's claims. "In order for a . . . court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (second and third alterations in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "Such activity or occurrence must 'create a substantial connection with the forum State,'" and without such "connection, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019) (first quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014); and then quoting *Bristol-Myers Squibb*, 582 U.S. at 264).

In evaluating whether due process allows the exercise of specific jurisdiction, courts consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The minimum contacts analysis

11

is fact intensive, and the touchstone is "whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)).

Here, Plaintiff failed to allege any contacts between Latif and the state of Texas, aside from conclusory, group allegations. Accordingly, the Court need not consider the remaining factors and concludes that Plaintiff has failed to make a prima facie showing of personal jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Ahshan Kabir Latif's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 47].

**SO ORDERED.**

SIGNED September 22, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**