# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ENERGIUM HEALTH<br><br>v.<br><br>ALI M. GABALI, SHAFIQUL ALAM,<br>DIAGNOSTIC HEMATOLOGY,<br>DIAGNOSTIC HEMATOLOGY-<br>ONCOLOGLY, DIAGNOSTIC<br>HEMATOLOGY, P.C., DIAGNOSTIC<br>HEMATOLOGY – P.L.L.C., ENCORE<br>DIAGNOSTIC LABORATORY, GREAT<br>LAKES EQUIPMENT, L.L.C., S ALAM<br>LAB SERVICE, HEMATOLOGY<br>ONCOLOGY GLOBAL SERVICES,<br>J&K SUPPLIES AND MANAGEMENT,<br>MYHEALTH URGENT CARE, PC,<br>AHSHAN KABIR LATIF, MYHEALTH<br>UC MANAGEMENT PLC, ASCENSION<br>MYHEALTH URGENT CARE,<br>MYHEALTH MANAGEMENT, LLC,<br>KHAIRYA FAREA, MICHEL<br>ALKHALIL, CONSORTIUM<br>LABORATORY SERVICES, LLC, and<br>FADI DEMASHKIEH | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:21-CV-2951-S |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") [ECF No. 63]. The Court has reviewed the Motion, Plaintiff's Response to Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim ("Response") [ECF No. 72-1], and Defendants' Reply in Support of Motion to Dismiss ("Reply") [ECF No. 78]. For the following reasons, the Court **GRANTS** the Motion.

# I. BACKGROUND

This case centers around the alleged abuse of a "business relationship" that grew between Plaintiff Energium Health and Defendants for over a year. Plaintiff brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, theft, and fraud, alleging that Defendants fraudulently induced Plaintiff to invest in a business venture called Consortium Laboratory, a state-of-the-art medical laboratory intended to generate profits by processing COVID-19 tests. Second Am. Compl. [ECF No. 37] ¶ 106. However, after Plaintiff had purchased and delivered millions of dollars worth of supplies, equipment, and capital, Defendants allegedly stole and concealed Plaintiff's investment by transferring it to "a wide network of shell companies with interlocking relationships." *Id.* ¶ 91.

Plaintiff "is in the business of providing medical supplies to companies, including supplies for COVID-19 testing, equipment, infrastructure, capital financing, logistics management, and delivering product support and training services." *Id.* ¶ 28. Plaintiff alleges that individual Defendants Ali Gabali, Shafiq Alam, Michel Akhalil, and Fadi Demashkieh are licensed medical doctors who lead an "enterprise network" of "various entities" doing business in the medical industry. *Id.* ¶ 29. Gabali also works as "a professor of Wayne State University, head of hematology division and director of hematopathology fellowship program, Co-Director of Hematology Unit, WSU-School of Medicine, Director of Core Hematology and Fellow Cytometry, Karmanos Cancer Center and Detroit Medical Center." *Id.* ¶ 38.

Plaintiff's business relationship with Defendants allegedly involved Gabali, Alam, and their associated entities contracting with Plaintiff to purchase COVID-19 testing supplies from Plaintiff on a regular basis. *Id.* ¶ 45. According to Plaintiff, at some point, Gabali also convinced Plaintiff to fund Consortium Laboratory as the sole investor, purchase millions of dollars of

equipment and inventory, and establish a customer service call center for the facility through misrepresentations. *Id.* ¶ 35. Specifically, Plaintiff alleges that it was led to believe that Consortium Laboratory would serve "contracts with Delta Airlines, United Airlines, and Meijer Supermarkets." *Id.* ¶ 60. Presumably to meet the demand of these large customers, Plaintiff avers that "[t]he capacity of the testing instruments and equipment [for Consortium Laboratory] was based on the assumption of processing at least 3,000 tests per day with the capacity to expand if needed immediately" and that "the exclusivity of the lab was to acquire the contract with the airlines using Meijer's Supermarkets as collection points as a start." *Id.* ¶ 48 Plaintiff also cites as "[a]n example of the financial assumption presented to [Plaintiff], terms of revenue per test for initial capacity was a revenue objective of $1 million to $1.5 million per month." *Id.* Plaintiff further alleges that "[t]he enterprise network used Dr. Gabali's public office credentials to pursue, entice, and defraud [Plaintiff]" and "[t]he network utilized interchanging roles and duties between individuals and entities to mislead [Plaintiff] throughout its business relationship." *Id.* ¶¶ 38-39.

At some point during the process of establishing Consortium Laboratory, Defendants allegedly stopped paying Plaintiff for the COVID-19 testing supplies it continued to supply pursuant to their contract. *Id.* ¶¶ 45-46. Then, "[a]fter [Plaintiff] confronted Dr. Alam and Dr. Gabali about the outstanding invoices and misrepresentations, Dr. Gabali, representing the enterprise network, claimed that [Plaintiff] owed the enterprise network monies." *Id.* ¶ 69. Plaintiff alleges that, eventually, Gabali "caused a letter and fraudulent invoice to be mailed by FedEx" to Plaintiff "that purported to be from and sent by Richard Wheeler, an associate of Dr. Gabali at [Diagnostic Hematology PC]." *Id.* ¶ 68. Per Plaintiff, Wheeler denied sending the letter or the invoice, and Gabali "denied having any knowledge about the invoice and the sender." *Id.* Plaintiff maintains that Defendants sent multiple invoices purporting to charge Plaintiff for services

Plaintiff never received and that the sum of the dollar amount of each invoice "equates to the outstanding balances owed to [Plaintiff] at that time." *Id.* ¶ 69.

Plaintiff filed its lawsuit on November 24, 2021, naming Ali M. Gabali, Shafiq Alam, and various business entities as defendants. On November 9, 2022, the Court denied Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue [ECF No. 21] based on Plaintiff's First Amended Complaint [ECF No. 9]. *See* Mem. Op. and Order [ECF No. 35]. Shortly thereafter, Plaintiff filed the Second Amended Complaint [ECF No. 37], adding several more individuals and business entities as defendants and omitting some of the facts alleged in the First Amended Complaint.

Gabali, Alam, Great Lakes Equipment LLC ("Great Lakes"), Encore Diagnostics LLC ("Encore"), Diagnostic Hematology PC ("DH"), J&K Supplies Management, LLC ("J&K"), Hematology Oncology Global Services ("HOGS"), MyHealth Urgent Care PC ("MyHealth"), Fadi Demashkieh, Michel Alkhalil, and Khairya Farea (collectively, "Moving Defendants") filed the Motion on January 17, 2023. Mot. 1. Moving Defendants seek dismissal of all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 3-4.

## II. LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State*

*Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

When a plaintiff alleges claims sounding in fraud, they must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b). *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). In other words, a plaintiff must provide the "who, what, when, where, and how" of the alleged fraud. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (citation omitted).

## III. ANALYSIS

The Second Amended Complaint fails to state a plausible claim upon which relief can be granted. Plaintiff's RICO claim fails because Plaintiff fails to plead a pattern of racketeering

activity. None of the predicate acts alleged by Plaintiff are supported by adequate factual allegations. Specifically, Plaintiff's mail fraud claim fails because the Second Amended Complaint lacks the requisite factual allegations supporting a finding of specific intent to defraud. Plaintiff's wire fraud claim fails because Plaintiff did not plead any facts in support of the essential element of interstate use of a wire. Plaintiff's money laundering claim fails because Plaintiff did not identify a "specified unlawful activity" as required by 18 U.S.C. § 1956(a).

None of Plaintiff's common law claims survive either. Plaintiff fails to state a civil conspiracy claim because it established no unlawful overt acts. Plaintiff's theft claim lacks factual support showing unlawful appropriation of Plaintiff's property. And Plaintiff's fraud claim falls short because Plaintiff failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and the Second Amended Complaint lacks factual support for the essential elements of falsity and detrimental reliance.

### A. RICO

Moving Defendants first move to dismiss Plaintiff's civil RICO claims under 18 U.S.C. §§ 1962(a), (b), (c), and (d), which are based on alleged predicate acts of mail fraud, wire fraud, and money laundering.[1] Second Am. Compl. ¶ 130. To state a civil RICO claim under any of the relevant subsections, a plaintiff must adequately allege "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir.1996)). A "pattern" involves "at least two" predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

---

[1] While the Second Amended Complaint also alleges bank fraud as part of the pattern of racketeering, Plaintiff disclaims this allegation in its Response. Second Am. Compl. ¶¶ 130, 150; Resp. 19.

Moving Defendants challenge Plaintiff's RICO claims on several grounds. Mot. 4. According to Moving Defendants, the Second Amended Complaint fails to establish a pattern of racketeering activity, fails to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) for pleading predicate acts, and fails to allege an enterprise or the elements of Plaintiff's substantive RICO claims. *Id.*

Because the pattern of racketeering activity element is dispositive in this case, the Court only considers that element of Plaintiff's RICO claims. Plaintiff pleads three predicate acts: (1) mail fraud, (2) wire fraud, and (3) money laundering. As stated above, a "pattern of racketeering activity" requires at least two predicate acts. 18 U.S.C. § 1961(5). Thus, if Plaintiff fails to plead the predicate acts with particularity, it cannot establish a pattern of racketeering activity. The Court considers each alleged act in turn.

*i. Mail Fraud*

Mail fraud involves "a person, 'having devised or intending to devise any scheme or artifice to defraud,' us[ing] the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). To plead a RICO claim predicated on mail fraud, "a plaintiff must allege: (1) a scheme to defraud; (2) interstate or intrastate use of the mails; (3) use of the mails in connection with the scheme to defraud; and (4) actual injury to the plaintiff." *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 834 (5th Cir. 2021) (citation omitted). "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element[.]'" *Bridge*, 553 U.S. at 647 (quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)). To satisfy the "scheme to defraud" element, a plaintiff must show "a recognizable scheme formed with specific intent to defraud." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1003

(S.D. Tex. 1995) (quoting *Marriott Bros. v. Gage*, 704 F. Supp. 731, 739 (N.D. Tex. 1988), *aff'd*, 911 F.2d 1105 (5th Cir. 1990)).

Moving Defendants argue that Plaintiff fails to properly plead the predicate act of mail fraud because the Second Amended Complaint contains no facts showing how the alleged mail fraud furthered the scheme or supporting a finding that Moving Defendants had a specific intent to defraud. Mot. 6. Plaintiff responds by listing paragraphs in the Second Amended Complaint that it claims allege "mail . . . fraud activities in furtherance of the RICO scheme" and attaching over a dozen documents to its Response purporting to "demonstrate examples of a variety of continued mailings and emailings, as well as Defendants' misrepresentations." Resp. 7-15. Moving Defendants reply that none of Plaintiff's cited paragraphs allege how individual acts of mail fraud furthered the alleged scheme or plead the required circumstances of the fraud with adequate specificity, such as "who caused what to be mailed when." Reply 2 (quoting *Bonton*, 889 F. Supp. at 1002).

The Court agrees with Moving Defendants that Plaintiff fails to allege facts supporting a finding of specific intent to defraud and fails to plead the circumstances of the alleged fraud with the requisite specificity.[2] "Although intent can be averred generally under Rule 9(b), a RICO mail fraud averment must nonetheless provide some 'factual basis for conclusory allegations of intent,' which must, in turn, give rise to a 'strong inference' of fraudulent intent." *Bonton*, 889 F. Supp. at 1004 (quoting *Marriott Bros.*, 704 F. Supp. at 740). Instead of providing the requisite factual basis, Plaintiff both omits crucial facts and includes minute details without explaining their relevance.

---

[2] Because these issues are dispositive on the predicate act of mail fraud, the Court will not address Moving Defendants' remaining arguments.

For example, Plaintiff alleges that Gabali "caused a letter and fraudulent invoice to be mailed" to Plaintiff "that purported to be from and sent by Richard Wheeler." Second Am. Compl. ¶ 68. Per Plaintiff, Wheeler denied sending the letter or the invoice, and Gabali "denied having any knowledge about the invoice and the sender." *Id.* However, in the next paragraph, Plaintiff states that, "[a]fter [Plaintiff] confronted Dr. Alam and Dr. Gabali about the outstanding invoices and misrepresentations, Dr. Gabali, representing the enterprise network, claimed that [Plaintiff] owed the enterprise network monies." *Id.* ¶ 69. The reader is left to guess at the significance of these details. First of all, the allegations switch from discussing one invoice and letter to "invoices" without explanation. *Id.* Second, viewing the facts in the light most favorable to Plaintiff, it is still unclear whether Gabali changed his story from denying knowledge of an invoice to claiming that Plaintiff must pay it, which might indicate intent to defraud, or whether Gabali denied knowledge of the single invoice described in Paragraph 68 and then later "claimed that Plaintiff owed the enterprise network monies" by some other method without reference to the first invoice or letter, which would not demonstrate intent to defraud. *See Ratcliff v. S. C/P/D Inc.*, 64 F. App'x 417, 2003 WL 1529539, at *1 (5th Cir. 2003) (explaining that courts "cannot assume facts that were not alleged" under Rule 12(b)(6)).

Further, the Second Amended Complaint alleges that Alam and Gabali "made false and misleading information and claims and committed fraud by producing false medical invoices" and lists the dollar amount charged by the "fictitious and false invoices," but never explains for what "services" the invoices purported to charge Plaintiff. Second Am. Compl. ¶¶ 66, 69; *see Bonton*, 889 F. Supp. at 1004 (dismissing a RICO claim predicated on mail fraud where the plaintiff failed to adequately "describe the contents of the letter which was allegedly utilized to execute the scheme"). Thus, Moving Defendants are left "without notice of the nature of the allegedly false or

fraudulent statements." *Bonton*, 889 F. Supp. at 1004. Aside from a conclusory statement that "there were no such services provided to [Plaintiff] by Dr. Gabali, Dr. Alam, or any of their enterprise network entities, per the invoices," Plaintiff alleges no facts supporting a finding that the invoices were false at all, leaving Moving Defendants without notice of "how [Plaintiff] was misled." Second Am. Compl. ¶ 69; *Bonton*, 889 F. Supp. at 1004.

Although Plaintiff fails to raise this argument in its Response, the Court notes that the Second Amended Complaint contains one fact that, generously read, could indicate fraudulent intent in the context of the mailed invoice or invoices. Paragraph 69 lists the dollar amount of three allegedly fraudulent invoices and avers that the amount equated to outstanding balances owed to Plaintiff. Second Am. Compl. ¶ 69. The Court could infer that the total amount charged by the invoices equating to the total amount owed to Plaintiff was not a coincidence, but a fabrication intended to support a fraudulent offset claim against Plaintiff so that Defendants could evade their debt to Plaintiff. However, even if Plaintiff had raised this argument, the Court concludes that this single "coincidence" is insufficient to support a strong inference of fraudulent intent with respect to the invoice or invoices.[3] *Bonton*, 889 F. Supp. at 1004. Accordingly, the Court concludes that Plaintiff has failed to allege mail fraud based on the allegedly fraudulent invoice or invoices.

Plaintiff argues that because Defendants allegedly induced "Plaintiff and others" into using the mail to ship COVID-19 testing supplies and laboratory equipment, among other items, in furtherance of the scheme, those shipments also constitute predicate acts of mail fraud under 18 U.S.C. § 1341. Resp. 14-15; *see Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) ("The mail fraud statute applies to anyone who knowingly causes to be delivered by mail

---

[3] The Court further concludes that this single fact is too weak to support a strong inference of fraudulent intent because Plaintiff fails to mention the "who, what, when, where, and how" of the second and third invoices as required by Rule 9(b). *Williams*, 112 F.3d at 179 (citation omitted).

anything for the purpose of executing any scheme or artifice to defraud." (citation omitted)). However, this argument fails because Plaintiff did not plead the circumstances of these alleged acts of mail fraud with particularity in accordance with Rule 9(b). The Second Amended Complaint contains no mention of the "time, place and contents of the false representations"[4] by which Plaintiff was allegedly induced to ship supplies, nor does it mention the who, what, when, where, and how[5] of the shipments themselves. *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 298 (5th Cir. 2011) (citation omitted). And the Court will not "look beyond the pleadings" to consider the exhibits attached to Plaintiff's Response. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citation omitted); *see also Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021) (refusing to consider exhibits attached to the plaintiff's response in opposition to the defendant's 12(b)(6) motion). Thus, Plaintiff has failed to allege mail fraud based on Plaintiff's purported shipments of supplies.

---

[4] The Court expresses no opinion on whether the allegations in the First Amended Complaint could have survived a motion to dismiss under Rule 12(b)(6) but notes that the First Amended Complaint contained more detail regarding Gabali's and Alam's alleged misrepresentations. For example, it specified that they used "phone calls, text messages through WhatsApp, and emails" to communicate with Plaintiff, convincing Plaintiff "to start a new lab known as Consortium Laboratory that was supposedly going to serve major testing contracts with Delta Airlines, United Airlines, and Meijer Supermarkets." First Am. Compl. [ECF No. 9] ¶¶ 54, 70. However, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). The Second Amended Complaint does not adopt or reference the First Amended Complaint. Further, the Second Amended Complaint omits all references to telephone calls, text messages, and WhatsApp. The only reference to email contained in the Second Amended Complaint merely describes an email in which Gabali "expressed pride in the high-quality products from [Plaintiff]," which Plaintiff included not because it was a misrepresentation, but because it "testifie[d] to the high quality of the supplies provided by [Plaintiff] to the wider network." Second Am. Compl. ¶ 112.

[5] In fact, the Second Amended Complaint never alleges that Plaintiff mailed or shipped anything at all. Instead, the Second Amended Complaint relies solely on conclusory allegations that Defendants "enticed" Plaintiff to "acquire and pay for" supplies, "lur[ed]" Plaintiff into "build[ing]" Consortium Laboratory "based on false premises and investment misrepresentations," and "committed fraudulent acts and statements in misrepresenting themselves and their business roles in order to induce [Plaintiff] to finance products to their laboratories." Second Am. Compl. ¶¶ 58, 117, 62.

### ii. Wire Fraud

"The elements of wire fraud are the same [as the elements of mail fraud], except that wire fraud requires interstate use of the wire." *Arruda*, 861 F. App'x at 834 (citing 18 U.S.C. § 1343). Moving Defendants contend that Plaintiff's wire fraud predicate fails because it does not satisfy Rule 9(b)'s heightened pleading standard, it does not allege facts supporting a finding of specific intent to defraud, and entirely fails to satisfy at least one wire fraud element. Mot. 7-9. Again, Plaintiff responds by listing paragraphs in the Second Amended Complaint that it claims allege "wire fraud activities in furtherance of the RICO scheme" and attaching over a dozen documents to its Response purporting to "demonstrate examples of a variety of continued mailings and emailings, as well as Defendants' misrepresentations." Resp. 7-15.

Plaintiff's allegations regarding wire fraud not only fail to meet Rule 9(b)'s heightened pleading standard, but also fail to satisfy at least one wire fraud element entirely.[6] When alleged as a RICO predicate, wire fraud is also "subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Arruda*, 861 F. App'x at 834. Here, the Second Amended Complaint fails to allege a single fact in support of the element of interstate use of a wire because it "fails to identify the mode of communications" for any of the alleged misrepresentations made by Moving Defendants. Mot. 8; *see also supra* n.4. And the Court agrees with Moving Defendants that Plaintiff fails to meaningfully address this argument in its Response. Reply 2. This deficiency is fatal to Plaintiff's wire fraud predicate. *Williams*, 112 F.3d at 179 (reversing district court's denial of motion to dismiss RICO claim predicated on wire fraud where complaint failed to satisfy Rule 9(b)'s particularity requirement); *see also Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir. 1989)

---

[6] Because this issue is dispositive on Plaintiff's wire fraud predicate, the Court will not address Moving Defendants' argument that Plaintiff failed to allege facts supporting a finding of specific intent to defraud.

(holding that plaintiff "did not even come close to meeting the pleading requirements for stating a RICO claim," in part because wire fraud predicate relied on nothing more than a conclusory list of communications).

### iii. Money Laundering

Plaintiff does not specify which prong or prongs of the money laundering statute it relies on for its money laundering allegations. *See* 18 U.S.C. § 1956(a)(1)-(3). Subsection (a)(2) deals with activity outside the United States, which is not alleged here, so the Court will analyze Plaintiff's claim under Subsections (a)(1) and (a)(3) only. To state a RICO money laundering predicate under 18 U.S.C. § 1956(a)(1), a plaintiff must allege that:

> (1) [a defendant] conducted a financial transaction; (2) which he knew involved proceeds arising from a specified unlawful activity; (3) with the intent to promote or further those illegal actions . . .; *or* (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds.

*U.S. v. Valdez*, 726 F.3d 684, 689 (5th Cir. 2013) (citing, among other sources, 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i)). To state a RICO money laundering predicate under 18 U.S.C. § 1956(a)(3), a plaintiff must allege that a defendant (1) "conduct[ed] or attempt[ed] to conduct a financial transaction"; (2) "involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity"; (3) with the intent to "promote the carrying on of specified unlawful activity," "conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity," or "avoid a transaction reporting requirement under State or Federal law."

According to Moving Defendants, Plaintiff's money laundering allegations are deficient because Plaintiff fails to allege how any of Moving Defendants' alleged financial transactions were unlawful and "fails to provide any factual basis that would lead to an inference of Defendants knowingly engaging in any unlawful activity." Mot. 11. Plaintiff again responds with a list of

paragraphs from the Second Amended Complaint purportedly alleging "Defendants' use of Plaintiff's monies, capital, and transfer / transmission of monies." Resp. 19. Citing cases from the First Circuit and the Seventh Circuit, Plaintiff appears to contend that the allegations in the Second Amended Complaint are "sufficient to support an inference of [intent to conceal]" because "Defendants have not accounted for the monies received, and they have transferred and or secreted the monies [to] other accounts or locations" and "add[ed] new, additional clinics / testing centers to give the appearance of a legitimate operation and to conceal the origination of funding." *Id.* at 20.

Plaintiff's money laundering predicate fails because the Second Amended Complaint does not identify a "specified unlawful activity" as required by Sections 1956(a)(1) and (a)(3). Section 1956(c)(7)(A) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title." The Second Amended Complaint identifies only two unlawful activities specified in Section 1961(1): mail fraud and wire fraud. As discussed *supra*, the allegations in the Second Amended Complaint do not amount to a plausible claim for mail fraud or wire fraud. Accordingly, Plaintiff fails to state a RICO claim predicated on money laundering. *See Advanced Optics Elecs., Inc. v. Robins*, 633 F. Supp. 2d 1237, 1254 (D.N.M. 2008) (dismissing RICO claim predicated on money laundering because the only plausible "specified unlawful activity" was wire fraud and the complaint failed to clearly meet the elements of wire fraud, much less satisfy Rule 9(b)'s heightened pleading standards).

Because the Second Amended Complaint fails to allege facts that satisfy Rule 9(b)'s heightened pleading standards and the elements of the alleged predicate acts of mail fraud, wire fraud, and money laundering, Plaintiff has failed to establish a pattern of racketeering activity.

Therefore, Plaintiff's RICO claim cannot survive dismissal under Rule 12(b)(6), and the Court need not reach Moving Defendants' other RICO arguments.

### B. Civil Conspiracy

Moving Defendants next challenge Plaintiff's civil conspiracy claim. Mot. 26-27. To state a claim for civil conspiracy, a plaintiff must allege "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citation omitted). "[C]ivil conspiracy is not an independent tort," but "requires an underlying tort that has caused damages." *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (citation omitted); *see also Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530-31 (5th Cir. 2004) (affirming district court's ruling that plaintiff could not state a claim for civil conspiracy under Texas law without satisfying all of the elements of the underlying unlawful act).

According to Moving Defendants, Plaintiff's civil conspiracy claim fails because the Second Amended Complaint does not allege "any meeting of the minds or central object for the conspiracy," "any overt, unlawful act or tort taken by any individual defendant to further the purpose of the alleged conspiracy," or "any purpose or object the combination was intended to accomplish." Mot. 20. Plaintiff responds to Moving Defendants' "meeting of the minds" argument by citing *Bradt v. Sebek* for the proposition that "[t]he agreement may be tacit and can be alleged and proven by circumstantial evidence." Resp. 36 (emphasis omitted) (citing 14 S.W.3d 756, 766 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Plaintiff counters Moving Defendants' argument that Plaintiff failed to plead a purpose or object of the conspiracy with a list of paragraphs in the Second Amended Complaint purporting to support its contention that the purpose or object

of the alleged conspiracy was to "obtain the Plaintiff's monies, supplies, equipment, and funding to operate lab testing operations, expand same, purposely not pay monies owed to the Plaintiff, and use the monies and assets obtained from the Plaintiff to generate business and continue expanding." Resp. 35. Plaintiff does not meaningfully address Moving Defendants' argument that Plaintiff failed to plead one or more unlawful, overt acts.

The Court agrees with Moving Defendants that Plaintiff fails to plead one or more unlawful, overt acts.[7] Although Plaintiff's Response fails to meaningfully address this argument, the Court will analyze Paragraphs 64-69 of the Second Amended Complaint, listed under the heading "Continued Overt Acts of the Scheme." The "unlawful acts" expressly listed in this section include "healthcare fraud, mail fraud, and wire fraud" based on the allegedly false invoices discussed above. Second Am. Compl. ¶ 69. As previously discussed, the invoice allegations fail to state a mail fraud claim because Plaintiff fails to allege facts supporting a strong inference that the invoices were mailed with the specific intent to defraud. *See supra* Section III.A.i. Similarly, Plaintiff's invoice allegations fail to state a wire fraud claim because Plaintiff alleges no facts in support of the element of interstate use of a wire. *See supra* Section III.A.ii. Finally, to the extent Plaintiff intended to allege healthcare fraud based on the invoice allegations as an overt act in furtherance of the conspiracy, that claim also fails because the Second Amended Complaint lacks sufficient facts supporting a strong inference of specific intent to defraud. *See United States v. Anderson*, 980 F.3d 423, 430 (5th Cir. 2020) (acknowledging that specific intent to defraud is required to prove healthcare fraud under 18 U.S.C. § 1347).

---

[7] Because this issue is dispositive on Plaintiff's civil conspiracy claim, the Court will not address Moving Defendants' other arguments.

None of the other allegations in Paragraphs 64-69 amount to an unlawful overt act for purposes of Plaintiff's civil conspiracy claim, and Plaintiff does not argue otherwise. Therefore, Plaintiff's civil conspiracy claim fails because Plaintiff has not alleged the essential element of an unlawful overt act.

### C. Theft

Next, Moving Defendants argue that Plaintiff's theft claim should be dismissed. To state a claim under the Texas Theft Liability act, a plaintiff must allege that "(1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Penal Code; and (3) the plaintiff sustained damages as a result of the theft." *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE §§ 134.002(2), 134.003, 134.005(a); TEX. PENAL CODE §§ 31.03(a), 31.05). "'Appropriation of property is unlawful if it is without the owner's effective consent.'" *Id.* (quoting TEX. PENAL CODE § 31.01(2)).

Under Texas law, consent is not effective if "induced by deception or coercion." TEX. PENAL CODE § 31.01(3)(A). "Deception" is statutorily defined as "promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed." *Id.* § 31.01(1)(E). However, "failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed." *Id.*

According to Moving Defendants, Plaintiff's theft claim fails because the Second Amended Complaint does not establish facts showing that Plaintiff's property was unlawfully appropriated or that Defendants acted with intent to deprive Plaintiff of property. Mot. 21. Moving

Defendants maintain that no property was appropriated unlawfully because "Defendants' access and ability to make decisions regarding Plaintiff's inventory, equipment, capital investment, and profits thereof flowed directly from the contractual obligations of the Parties." *Id.* Plaintiff responds that "intent is inferred from the Defendants' activities," references Paragraphs 28-62 and 173-74[8] of the Second Amended Complaint, and quotes *Drywall Elements, LLC v. Edward Wolff & Associates, LLC*, for the proposition that "[e]ven in cases where there exists no evidence directly indicating an intent to steal property, it has been held that such intent may be inferred from the words, actions, or conduct of the actor." Resp. 38 (quoting No. 4:21-CV-00537-CAN, 2022 WL 4667997, at *6 (E.D. Tex. Sept. 30, 2022)).

The Second Amended Complaint fails to allege facts that, taken as true, would show that Plaintiff's property was unlawfully appropriated.[9] While the Second Amended Complaint avers in conclusory fashion that Defendants "did not have or intend to perform on [significant contracts for COVID-19 testing] yet kept and used the supplies and equipment as well as [P]laintiff's assets and capital investment," Plaintiff points to no *facts* supporting an inference that Plaintiff's supplies, equipment, assets, or capital investment were appropriated without Plaintiff's effective consent. Second Am. Compl. ¶ 174.

Because Plaintiff cites Paragraphs 28-62 in support of its argument that it has stated a claim for theft, the Court will review and evaluate each allegation related to Plaintiff's effective consent, or lack thereof, in the designated range. The Court concludes that, while Plaintiff repeatedly states

---

[8] Paragraphs 173-74 of the Second Amended Complaint fall under the heading "Count Three: Theft." Because these paragraphs only discuss physical property and money (inventory, equipment, capital investment, and profits), not services, the Court concludes that "unlawfully obtained services" are not in issue.

[9] Because this issue is dispositive on Plaintiff's theft claim, the Court will not address Moving Defendants' argument that Plaintiff failed to allege facts tending to show that Defendants acted with intent to deprive Plaintiff of property.

that Gabali and Alam induced Plaintiff into giving them property by deception, it never goes beyond "labels and conclusions." *Twombly*, 550 U.S. at 555. For example, Paragraph 35 states that Plaintiff's choice to solely fund and "build out the state-of-the-art Consortium Laboratory as well as full scale logistical center which operated under the full control of Gabali" was "[b]ased on misleading and false business representation," but never identifies the substance of the "business representation" or why the Court should infer that it was "false." Second Am. Compl. ¶ 35. Rather, Paragraph 35 simply reiterates that "[t]he enterprise network enticed [Plaintiff] to invest in Consortium Laboratory," without explaining *how* Plaintiff was "enticed." *Id.*

Paragraph 38 gets more specific, but still ultimately fails to support Plaintiff's position that it was induced by deception. Plaintiff avers that "[t]he enterprise network used Dr. Gabali's public office credentials to pursue, entice, and defraud [Plaintiff]." *Id.* ¶ 38. However, Plaintiff not only fails to allege that Gabali's "public office credentials" were fake, but also seems to concede that Gabali is in fact "a professor of Wayne State University, head of hematology division and director of hematopathology fellowship program, Co-Director of Hematology Unit, WSU-School of Medicine, Director of Core Hematology and Fellow Cytometry, Karmanos Cancer Center and Detroit Medical Center," and "a certified pathologist in the State of Michigan and the State of Ohio." *Id.*

Paragraph 39 alleges that "[t]he network utilized interchanging roles and duties between individuals and entities to mislead [Plaintiff] throughout its business relationship," but fails to explain how "interchanging roles and duties" is inherently deceitful or how it induced Plaintiff into giving Moving Defendants its property. *Id.* ¶ 39. Plaintiff again alleges that Gabali "used his credentials" to "ostensibly show that he was a person that [Plaintiff] could trust for doing

business," but Plaintiff fails to explain how truthfully representing one's medical credentials constitutes "deception." *Id.* ¶ 43.

Paragraph 48 is almost incomprehensible, alleging that Gabali "misrepresented a business case to [Plaintiff] for a need to build a state-of-the-art exclusive laboratory, which he named Consortium Laboratory Services, LLC, backed by a call center, dispatch service, fleet vehicles, and personnel." *Id.* ¶ 48. Plaintiff leaves a few clues as to what the misleading "business case" might be, stating that "[t]he capacity of the testing instruments and equipment was based on the assumption of processing at least 3,000 tests per day with the capacity to expand if needed immediately" and that "the exclusivity of the lab was to acquire the contract with the airlines using Meijer's Supermarkets as collection points as a start." *Id.* Plaintiff also cites as "an example of the financial assumption presented to [Plaintiff], terms of revenue per test for initial capacity was a revenue objective of $1 million to $1.5 million per month." *Id.* However, Plaintiff fails to allege facts supporting its conclusion that Gabali's statements were knowing misrepresentations as opposed to incorrect predictions and promises. *See* TEX. PENAL CODE § 31.01(1)(E) ("[F]ailure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed."). Instead, Plaintiff repeats its conclusory refrain that it "relied on Dr. Gabali's credentials and expertise, and the Defendants' misrepresentations to make the investment." Second Am. Compl. ¶ 48.

Paragraph 49 purports to allege a specific misrepresentation made by Gabali. According to Plaintiff, Gabali "claims he was not using Consortium Laboratory for testing, however the website for Consortium Laboratory indicates/indicated the opposite." *Id.* ¶ 49. But Plaintiff fails to explain the significance of this statement or whether Plaintiff relied on it to its detriment. Paragraph 50 reiterates the conclusion that Gabali "used the monies [Plaintiff] paid to HOGS and J&K Supplies

Management as advance draw payments based on misrepresentations." *Id.* ¶ 50. Paragraph 57 states that Gabali and Alam "convinced [Plaintiff] to build an inventory of products worth two million dollars ($2,000,000) to be used by the enterprise network" as part of "the enterprise network's misrepresentations and intent to defraud." *Id.* ¶ 57. Paragraph 58 alleges that Gabali, Alam, "and the enterprise network enticed [Plaintiff] to acquire and pay for [supplies and equipment] for [DH] while knowing that he was planning to dissolve [DH] and divert business to other entities." *Id.* ¶ 58. Yet Plaintiff still does not identify how Defendants "enticed" it into paying for the supplies and equipment or why it was deceitful, nor does it allege facts supporting its conclusion that Defendants "kn[ew] that [Gabali] was planning to dissolve [DH] and divert business to other entities." *Id.* Paragraph 59 alleges that Gabali "misrepresented his role in the company" and that Gabali and Alam "are founders and owners among other partners for Encore Diagnostic Laboratory," but Plaintiff fails to explain how Gabali presumably led Plaintiff to believe that he was not a founder, owner, or partner for Encore Diagnostic Library or how this alleged misrepresentation induced Plaintiff into giving Gabali Plaintiff's property. *Id.* ¶ 59.

Paragraph 60 alleges that Defendants "convinced [Plaintiff] to start a new lab known as Consortium Laboratory Services, LLC that was supposedly going to serve major testing contracts with Delta Airlines, United Airlines, and Meijer Supermarkets." *Id.* ¶ 60. The Court liberally construes this sentence to mean that Defendants used the promise of contracts with Delta Airlines, United Airlines, and Meijer Supermarkets to convince Plaintiff to invest in Consortium Laboratory Services, LLC, but Plaintiff fails to explain how this representation was deceitful rather than merely incorrect.

Paragraph 61 alleges that Gabali "induced" Plaintiff to make "capital investments" such as "[t]he call center / warehouse with its equipment, fleet of vehicles, location lease, office supplies,

and management fees," which are "worth $380,000.00," as well as "a working inventory medical lab supply estimated at $2 million dollars" to "ostensibly justify consuming the large inventory, to which he already had unlimited access." *Id.* ¶ 61. Nowhere does Plaintiff explain how Gabali induced Plaintiff to make these investments or what made his inducement deceptive. Finally, Paragraph 62 states that Alam and Gabali, "on behalf of the enterprise network, committed fraudulent acts and statements in misrepresenting themselves and their business roles in order to induce [Plaintiff] to finance products to their laboratories" without specifying what those fraudulent acts or statements were, explaining how their representation of their "business roles" was deceptive, or stating how the alleged misrepresentation of their "business roles" induced Plaintiff to relinquish its property. *Id.* ¶ 62.

Because Plaintiff alleges no facts supporting an inference that Plaintiff's supplies, equipment, assets, or capital investment were appropriated without Plaintiff's effective consent, Plaintiff fails to state a plausible theft claim.

### D. Fraud

Finally, Moving Defendants challenge Plaintiff's fraud claim. To state a fraud claim under Texas state law, a plaintiff must allege that:

> (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks and citation omitted). All claims sounding in fraud, including state-law claims, "are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) (citation omitted).

Moving Defendants argue that Plaintiff's fraud allegations are not pleaded with particularity in accordance with Rule 9(b) and that the Second Amended Complaint "fails to identify any specific statement or representation by an individual Defendant which Plaintiff contends to be false, or on which Plaintiff contends it relied to its detriment." Mot. 20-21. Plaintiff responds that "various paragraphs of the [Second Amended Complaint] allege fraud and misrepresentations, including wire fraud and mail fraud." Resp. 36. Citing *Megatel Homes, LLC v. Moayedi*, Plaintiff erroneously maintains that "the requirements for pleading fraud are essentially relaxed." *Id.* (citing No. 3:20-CV-00688-L, 2022 WL 2306949, at *12 (N.D. Tex. June 27, 2022)). Plaintiff quotes *Megatel* at length and "again references ¶¶ 28-62" before simply stating that the Second Amended Complaint "specifically allege[s] fraud and misrepresentations, and clearly, one can infer fraudulent intent from the Defendants' activities."[10] *Id.* at 38.

The Court concludes that Plaintiff's fraud allegations are not pleaded with particularity in accordance with Rule 9(b) and fail to identify facts that, taken as true, would satisfy the elements of falsity or detrimental reliance. The Court's "effective consent" analysis of each allegation mentioning misrepresentation, inducement, or enticement in Paragraphs 28-62, *supra* Section III.C, applies with equal force to the question of whether any of the alleged misstatements were false and whether Plaintiff relied on any of the alleged misstatements to its detriment, and it is hereby incorporated by reference. And, given that Plaintiff fails to allege facts supporting two entire elements of fraud, Plaintiff's fraud allegations certainly cannot satisfy Rule 9(b)'s particularity requirement.

---

[10] In *Nichols v. Enterasys Networks, Inc.*, the Fifth Circuit found that an appellant had waived an issue because his brief did not contain "any legal argument beyond bare assertions." 495 F.3d 185, 190 (5th Cir. 2007). Similarly, Plaintiff's Response lacks any argument or analysis in support of its fraud claim or in response to Moving Defendants' argument that it fails to comply with Rule 9(b). *See* Local Civil Rule 7.1(d) ("A response to an opposed motion must be accompanied by a brief that sets forth the responding party's contentions of fact and/or law, and argument and authorities.").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 63] and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendants Ali M. Gabali, Shafiq Alam, Great Lakes Equipment LLC, Encore Diagnostics LLC, Diagnostic Hematology PC, J&K Supplies Management, LLC, Hematology Oncology Global Services, MyHealth Urgent Care PC, Fadi Demashkieh, Michel Alkhalil, and Khairya Farea.

Plaintiff must seek leave to file an amended complaint by October 13, 2023. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED September 29, 2023.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**